UNITED STATES DISTRICT COURT
DISTRICT OF DELAWARE

In re:

|  |  |
|---|---|
| BUFFETS HOLDINGS, INC., a Delaware corporation, et al., | Chapter 11 Jointly Administered |
|  | Case No 08-10141 |
| Debtors. |  |
| Delmarva Power & Light Company, Potomac Electric Power Company, Atlantic City Electric Company, Florida Power & Light Company, and Sacramento Municipal Utility District, | Case No. 1:08-cv-00188-SLR |
| Appellants, |  |
| v. |  |
| Buffet Holdings, Inc., |  |
| Appellees. |  |

BRIEF OF APPELLANTS

Michael P. Morton
Michael P. Morton P.A.
1209 North Orange
Wilmington DE
(302) 426-1313
       and

William Douglas White
McCarthy & White, PLLC
8180 Greensboro Drive, Suite 875
McLean VA  22102
Tel:  (703) 770-9265
Fax:  (703) 770-9266
Email: wdw@mccarthywhite.com
Counsel for Delmarva Power & Light Company
Atlantic City Electric Company, Florida Power &
Light Company and Sacramento Municipal
Utility District

i

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......................................................................................................... iii

STATEMENT OF NATURE OF PROCEEDING ......................................................................1

STATEMENT OF THE ISSUES PRESENTED..........................................................................1

STANDARD OF REVIEW ..........................................................................................................2

SUMMARY OF THE CASE.........................................................................................................2

STATEMENT OF THE FACTS ..................................................................................................5

ARGUMENT.................................................................................................................................7

    I.   BAPCPA Established a Procedure for Adequate Assurance of Payment......................7

    II. The Bankruptcy Court Erred In Approving the Utility Account as a
    Proper Assurance of Payment Under 11 U.S.C. § 366(C)(1)(A)...................................9

        A. The Utility Account Is Not An Approved Form Of An Assurance
        Of Payment Under The Express Terms Of Section 366(C)(1)(A) ..........................9

        B.  Section 366 Does Not Authorize The Bankruptcy Court And/Or
        The Debtors To Dictate The Form Of An Assurance Of Payment That A
        Utility Must Accept..............................................................................................10

        C. The Debtor Did Not Deliver A Payment Assurance To The Utilities ...................10

    III.   The Bankruptcy Court Erred in Approving "Procedures" That Reversed The
       Burdens Imposed By Congress In Revised Section 366...............................11

    IV.   The Procedures Approved By The Bankruptcy Court Do Not Comply With
       Applicable Non-Bankruptcy Law.......................................................13

CONCLUSION.............................................................................................................................16

# TABLE OF AUTHORITIES

CASES

Hartford Underwriters, Inc. Co. v Union Planters Bank, N.A.,
530 U.S. 1, (2000)...............................................................................................................16

In re Astle,
338 B.R. 855 (Bankr. D. Idaho 2006)......................................................................................9

In re Best Products Co.,
203 B.R. 51, 54 (Bankr. E.D.Va. 1996)...................................................................................13

In re Conxus Communications, Inc.,
262 B.R. 893, 899 (D.Del. 2001)............................................................................................13

In re Ennis,
50 B.R. 119, 122 (Bankr. Nev. 1985)......................................................................................13

In re Enron Corp.,
335 B.R. 22 (S.D.N.Y. 2005)..................................................................................................13

In re Goldberg,
221 B.R. 907, 909 (Bankr. M.D.Fla. 1998) ............................................................................13

In re John Alan Mann, Sr.,
88 B.R. 427, 429 (Bankr. S.D. Fla. 1988)................................................................................13

In re John C. Entz, III,
44 B.R. 483, 485 (Bankr. Ariz. 1984)......................................................................................13

In re Kham & Nate's Shoes No. 2, Inc.,
97 B.R 420, 428 (Bankr. N.D. Ill. 1989) .................................................................................13

In re Lucre, Inc.,
333 B.R. 151 (Bankr. W.D. Mich. 2005).................................................................................11

In re Morristown & Erie R.R. Co., 885 F.2d 98, 100 (3rd Cir. 1989)...............................15

In re O'Brien Environmental Energy Inc. 188 F3d 116 (3d Cir. 1999).............................2

In re Persig Farms, Inc., 46 B.R. 237, 240 (D. Minn. 1985).........................................15

Matter of PHM Credit Corp., 110 B.R. 284, 288 (E.D. Mich. 1990).............................15

In re Rashid, 97 B.R. 610, 615 (W.D.Okl. 1989)........................................................15

In re Smith,
142 B.R. 348, 349 (Bankr. W.D.Mo. 1992) ..............................................................13

In re Sonora Convalescent Hospital, Inc., 69 B.R. 134, 138 (Bankr. E.D.Cal. 1986)..........15

In re Viking Offshore (USA) Inc.
2008 WL 782449 (Bankr. S.D. Tex.)...................................................................12

Landrum v. FPL, 505 So.2d 552 (Dist. Ct. App. 1987)...........................................16

Matter of RobMac, Inc.,
8 B.R. 1, 3 (Bankr. N.D.Ga. 1979) ..........................................................................14

Manville Corp. v. Equity Security Holders Committee, 801 F.2d 60 (2d Cir. 1986)..........15

Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 108 S.Ct. 963, 968-69 (1988)..........15

Potts v. FPL, 841 So.2d 671 (Dist. Ct. App. 2003)...............................................16

Southern Ry. Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3rd Cir. 1985).................15

## STATUTES

11 U.S.C. §366 .............................................................................. passim

28 U.S.C. §959(b) ..............................................................................2, 3, 16

28 U.S.C. 1651...................................................................................14

## RULES

Federal Rule of Bankruptcy Procedure 7001 ...........................................................13

Federal Rule of Bankruptcy Procedure 7004..........................................................14

Federal Rule of Bankruptcy Procedure 9014..........................................................14

iv

## STATEMENT OF NATURE OF PROCEEDING

Pursuant to Federal Rule of Bankruptcy Procedure 8001 et seq., Delmarva Power & Light Company, Potomac Electric Power Company, Atlantic City Electric Company[1], Florida Power & Light Company, and Sacramento Municipal Utility District (hereinafter the "Utilities" or Appellants) have appealed from the Final Order Pursuant to Section 366 of the Bankruptcy Code dated February 28, 2008 (Docket No. 414) issued by the United States Bankruptcy Court for the District of Delaware in the cases of Buffets Holdings, Inc et. al, Case No. 08-10141.[2]

The Final Order incorporated the Bankruptcy Court's earlier Interim Order of January 23, 2008, approved Debtors' Motion For Interim and Final Orders Pursuant to Section 366 of the Bankruptcy Code (the "Utility Motion") (*Docket No.* 6) and overruled the Utilities' Objection to Debtors' Motion For Interim and Final Orders (*Docket No.* 132). This was a core proceeding in the bankruptcy case under 28 U.S. C 157. This Court has jurisdiction over the instant appeal pursuant to 28 U.S.C. §158(a)(1).

## STATEMENT OF THE ISSUES PRESENTED

1. Did the Bankruptcy Court err when holding that the Utility Account (as defined in the Utility Motion, Interim Order and Final Order) was an acceptable form of an assurance of payment under 11 U.S.C. § 366(c) despite the fact that such form was not satisfactory to the Objecting Utilities.

2. Did the Bankruptcy Court err when holding that the Utility Account (as defined in the Utility Motion, Interim Order and Final Order) met the definition of an assurance set forth in 11 U.S.C. § 366(c)(1)(A).

---

[1] Pepco Holdings, Inc. is the parent company of Delmarva Power & Light Company ("Delmarva"), Atlantic City Electric Company ("ACE"), Potomac Electric Power Company ("Pepco").

[2] Gexa Energy LP also appealed from the Final Order but has reached an agreement with the Debtors terminating its services and is no longer participating in this appeal. A stipulation dismissing this appeal as to Gexa Energy LP is forthcoming.

3. Did the Bankruptcy Court's Interim and Final Orders violate the requirement of 11 U.S.C. 366(c)(2) that each Objecting Utility actually receive an assurance of payment within the first 30 days of the case.

4. Did the Bankruptcy Court's Interim and Final Orders granting Debtors' Utility Motion and approving the Debtor's Procedures reverse the burden imposed by the statute and effectively terminate each Objecting Utility's rights under 11 U.S.C. 366(c)(2).

5. Did the Bankruptcy Court err in granting the Debtors' Utility Motion on an ex parte basis.

6. Did the Bankruptcy Court's Interim and Final Orders granting Debtors' Utility Motion and approving the Debtor's Procedures violate the requirements of Bankruptcy Rule 9014 and 7004.

7. Did the Bankruptcy Court's Interim and Final Orders approving Debtors' request for injunctive relief violate the requirements of Bankruptcy Rule 7001 and other applicable requirements for the imposition of injunctive relief.

8. Did the Bankruptcy Court's Interim and Final Orders permit Debtors to ignore requirements imposed upon a debtor in possession under applicable state law and 28 U.S.C 959(b).

## STANDARD OF REVIEW

The Bankruptcy Court rendered its decision based on its construction of 11 U.S.C. § 366. Accordingly, this Court reviews the Bankruptcy Court's decision de novo. See In re O'Brien Environmental Energy Inc. 188 F3d 116, 122 (3d Cir. 1999).

## SUMMARY OF THE CASE

On January 22, 2008, the Debtors filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq in the United States Bankruptcy Court for the District of Delaware. That same day, Debtors filed a contested Motion seeking ex parte injunctive relief against the Utilities and several pre-emptive determinations about the application of Section 366. On the day after the petition was filed, January 23, 2008, the

2

Bankruptcy Court conducted a hearing without notice to the Utilities (Tr. Docket No. 201) and entered an Interim Order (Docket No. 32) granting the Motion on an interim basis, enjoining the Utilities from terminating service, approving Debtors' unilateral proposal for adequate assurance and establishing "Procedures" requested by the Debtors. This interim relief was incorporated into the Bankruptcy Court's Final Order of February 28, 2008 (Docket No. 414) and forms the basis for the current appeal. Thus, within 48 hours of the bankruptcy, the Bankruptcy Court approved Debtors' proposals that breached the requirements of 11 U.S.C. 366, 28 U.S.C. 959(b), and Bankruptcy Rules 7001, 7004 and 9014.

Appellants argue that fundamentally this appeal is controlled by the plain text of amended Section 366 and not by considerations of policy and prior bankruptcy practice that have prevailed in the Bankruptcy Court decisions in this District.

Section 366 was amended in October 2005 by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") and substantially modified the text of 11 U.S.C. § 366 in order to put an end to the very actions taken by the Debtors and the Bankruptcy Court at the beginning of this case. The addition of Subsection (c) to Section 366 unambiguously established the procedures by which a chapter 11 debtors are to provide adequate assurance of payment to their servicing utilities and prohibits many practices that were common in bankruptcy cases filed prior to October 17, 2005.

The text of Subsection (c) is critical to this appeal and states as follows:

> (c)(1)(A) For purposes of this subsection, the term 'assurance of payment' means –
>
>> (i)    a cash deposit;
>> (ii)   a letter of credit;
>> (iii)  a certificate of deposit;
>> (iv)   a surety bond;
>> (v)    a prepayment of utility consumption; or
>> (vi)   another form of security that is mutually agreed on between the utility and the debtor or the trustee.

3

(B)    For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

(2)    Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A)  On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).

(B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider –

(vii)    the absence of security before the date of the filing of the petition;

(viii)   the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or

(ix)     the availability of an administrative expense priority.

(4)    Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

On February 6, 2008, the Utilities filed the Utility Objection (*Docket No.* 189) in which the Utilities objected to the entry of the Utility Motion and requested that the Debtor deliver to the Utilities, within thirty (30) days of the Petition Date, a deposit in an amount equal to approximately the charges for two months' average electric service charges by the Utilities to the Debtor.

The Bankruptcy Court heard oral arguments with respect to the Utility Motion on February 13, 2008. As memorialized by the Final Order, (*Docket No.* 414), the Bankruptcy Court granted the Utility Motion and overruled the Utility Objection. In entering the Final Order, the Bankruptcy Court specifically held, among other things, that the Debtor's deposit of

4

funds into an interest bearing account held by the Debtors and not by the Utilities (the "Utility Account") qualified as an assurance of payment under 11 U.S.C. § 366(c)(1)(A).

The Bankruptcy Court's Orders suffer from at least two fatal defects. First, the Utility Account is not one of the approved forms of payment assurance identified in 11 U.S.C. § 366(c)(1)(A). Thus, the Bankruptcy Court ignored the plain language of Section 366. Additionally, when approving the Utility Account as an acceptable assurance of payment, the Bankruptcy Court rendered meaningless 11 U.S.C. §366(c)(2) which requires a chapter 11 debtor to timely deliver to its servicing utilities a tangible payment assurance that is deemed satisfactory by each utility.

Second, the Bankruptcy Court's construction of Section 366 improperly shifts to the Utilities the burden to object to the assurance of payment proposed by the Debtor in the Utility Motion. Section 366(c)(2) requires, without the imposition of burdens or the conditions upon a utility, that a debtor deliver to each of its servicing utilities, within thirty (30) days of the Petition Date, a payment assurance that is satisfactory in form and an amount to each respective utility. The "Procedures" approved by the Bankruptcy Court effectively eliminated the Debtor's obligation to deliver assurance of payment that the Utilities found satisfactory.

### STATEMENT OF THE FACTS

The Debtor currently operates numerous retail stores in the service territories of the Utilities. Delmarva is a publicly regulated utility that provides electric service pursuant to authority granted by the Delaware Public Service Commission and the laws of the State of Delaware. 26 Del. C. 201(a). Pepco is a publicly regulated utility that provides electric service pursuant to authority of the Maryland Public Service Commission and the laws of the State of Maryland. Florida Power and Light Company is a publicly regulated utility that provides electric service pursuant to authority of the Florida Public Service Commission and the laws of the state

5

of Florida. Sacramento Municipal Utility District is a local publicly owned utility that provides electric service in, and is a political subdivision of, the state of California.

On January 22, 2008 (the "Petition Date"), the Debtor filed with the Bankruptcy Court a voluntary petition for relief under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court").

On the Petition Date, the Debtor also filed the Motion For Interim and Final Orders Under Section 366 of the Bankruptcy Code (A) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (B) Deeming Utilities Adequately Assured of Future Performance, and (C) Establishing Procedures for Determining Adequate Assurance of Payment (the "Utility Motion") (*Docket No.* 6).

The Debtor requested in the Utility Motion the entry of both an interim order and a final order holding, among other things, that: (i) a deposit of a specified sum of money into an interest bearing account (the "Utility Account") was adequate assurance of payment for purposes of Section 366 for all utilities providing postpetition service to the Debtor; (ii) proceeds of the Utility Account were payable to a utility only upon the entry of an order by the Bankruptcy Court authorizing such payment; (iii) the Debtor's servicing utilities be enjoined from altering, refusing or discontinuing service to, or discriminating against the Debtor in connection with unpaid utility charges attributable to service provided prior to the Petition Date; and (iv) that unless and until the Bankruptcy Court enters an order compelling the Debtor to provide additional adequate assurance of payment, the Utilities and other requesting utilities would be deemed to be adequately assured of payment.

On February 6, 2008, the Utilities filed an Objection To Debtors' Motion For Interim and Final Orders Under Section 366 Of The Bankruptcy Code (the "Utility Objection") (*Docket No.*

6

189). The Bankruptcy Court conducted hearings on the Utility Motion on January 23 and February 13, 2008.[3] On February 28, 2008 the Bankruptcy Court entered its Final Order (1) Prohibiting Utility Providers from Altering, Refusing or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Performance, and (III) Establishing Procedures for Determining Adequate Assurance of Payment (the "Final Order") (*Docket No.* 414).

## ARGUMENT

### I.     BAPCPA Established a Procedure for Adequate Assurance of Payment

Despite the protections afforded to utilities under 11 U.S.C. §366 prior to the enactment of BAPCPA, *ex parte* orders and other judicial decisions interpreting the statute steadily eroded those safeguards in a manner that Congress apparently did not intend. Therefore, BAPCPA made substantial modifications to the text of Section 366 (as amended, "Section 366"), which became effective in bankruptcy cases commenced on or after October 17, 2005. Congress clearly expressed in the legislation the manner in, and procedure by, which utilities are entitled to be treated in chapter 11 bankruptcy cases. Section 366 (i) grants to utilities significant substantive rights concerning the payment assurance to which they are entitled and (ii) prescribes a procedure for a chapter 11 debtor to provide payment assurances that renders meaningless first day motions, interim orders and other practices that were common prior to BAPCPA.

Subsections (a) and (b) of Section 366 are substantively identical to their statutory predecessors. However, subsection (c) of Section 366 is a provision that unambiguously prohibits many of the practices that were common to cases filed prior to October 17, 2006. "As with most issues arising under BAPCPA, the threshold inquiry is to determine precisely what was said, and left unchanged, as Congress amended the Code." *In re Astle,* 328 B.R. 855, 857 (Bankr. D. Idaho 2006). Subsection (c) of Section 366 provides as follows:

---

[3] The Bankruptcy Court's subsequent order pursuant to the hearing on March 13, 2008 was limited to the level of funds the Debtors would be required to place into their Utility Account.

(c)(1)(A) For purposes of this subsection, the term 'assurance of payment' means –

    (i)     a cash deposit;
    (ii)    a letter of credit;
    (iii)a    certificate of deposit;
    (iv)    a surety bond;
    (v)     a prepayment of utility consumption; or
    (vi)    another form of security that is mutually agreed on between the utility and the debtor or the trustee.
    (B)    For purposes of this subsection an administrative expense priority shall not constitute an assurance of payment.

(2)    Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

(3)(A)  On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2).
    (B) In making a determination under this paragraph whether an assurance of payment is adequate, the court may not consider –

    (i)     the absence of security before the date of the filing of the petition;
    (ii)    the payment by the debtor of charges for utility service in a timely manner before the date of the filing of the petition; or
    (iii)   the availability of an administrative expense priority.

(4)    Notwithstanding any other provision of law, with respect to a case subject to this subsection, a utility may recover or set off against a security deposit provided to the utility by the debtor before the date of the filing of the petition without notice or order of the court.

    The protections granted to utilities by Section 366 reflect Congress' recognition of the inherent risk that utilities must bear since they are statutorily compelled to provide uninterrupted postpetition service to a debtor for a minimum period, even though the utility's invoices are payable only after the utility service has been irreversibly consumed by the debtor. Section 366

8

recognizes that non-utility creditors in a chapter 11 bankruptcy case are not <u>required</u> to incur such substantial risks.

**II.    THE BANKRUPTCY COURT ERRED IN APPROVING THE UTILITY ACCOUNT AS A PROPER ASSURANCE OF PAYMENT UNDER 11 U.S.C. 366**

   **(A)    The Utility Account Is Not An Approved Form Of An Assurance Of Payment Under The Express Terms Of 11 U.S.C. § 366(C)(1)(A).**

Subsection (c)(1)(A) of Section 366 is unambiguous. This subsection expressly identifies five (5) forms of tangible security that define what is an "assurance of payment". The Utility Account is none of these: a cash deposit, a letter of credit, a certificate of deposit, a surety bond, or a prepayment of utility consumption as is required by 11 U.S.C. § 366(c)(1)(A)(i-v). Moreover, the Utility Account was not a form of assurance to which the Utilities consented under that subsection. Section 366 subsection (c)(2) further defines the term by requiring that a utility actually <u>receive</u> the payment assurance. In so doing it renders absurd the concept of a Utility Account when the utility is demanding an assurance that is in a tangible form that a utility may possess.

The specified forms of a payment assurance defined in 11 U.S.C. § 366(c)(1)(A) (i-v) are not simply identified by way of example. *See In re Astle,* 338 B.R. at 860 n.13. The statute reads "the term 'assurance of payment' means . . .", which statement precludes any need to analyze whether payment assurances not specifically identified are adequate under Section 366. 11 U.S.C. § 366(c)(1)(A). Therefore, the Bankruptcy Court erred when it determined that the Utility Account was "perfectly acceptable" under Section 366. (Transcript, p. 64, line 22). Absent a utility's consent, Section 366 simply does not accord the Bankruptcy Court the discretion to approve payment assurance forms that are not specified in 11 U.S.C. § 366(c)(1)(A)(i-v). In this case, the Utilities did not consent to the Utility Account as a

9

satisfactory form of payment assurance and, thus, the Bankruptcy Court erred when approving the Utility Account as an acceptable assurance of payment.

**B.    Section 366 Does Not Authorize The Bankruptcy Court And/Or The Debtor To Dictate The Form Of An Assurance Of Payment That A Utility Must Accept.**

The Utilities did not consent to the Utility Account as a satisfactory form of payment assurance. As a result, Section 366 does not authorize the Bankruptcy Court or the Debtor to determine which of the approved assurances of payment the Utilities must accept. Subsection (c)(2) of Section 366 requires a chapter 11 debtor to deliver to its servicing utilities payment assurances deemed satisfactory by the receiving utility. Upon delivery of a payment assurance, any party is authorized under 11 U.S.C. § 366(c)(3) to file a motion requesting the entry of an order modifying the amount of the delivered payment assurance. However, the textual authorization for court modification of an amount of the payment assurances does not extend to the form of that assurance of payment. *See* 11 U.S.C. § 366(c)(3)(A). A precise reading of Section 366 reflects that a utility is the only party with discretion to determine which of the specified forms of payment assurance is satisfactory. Therefore, the Bankruptcy Court erred when requiring the Utilities to accept the Utility Account, a payment assurance not deemed satisfactory by the Utilities, as adequate assurance of payment.

**C.    The Debtor Did Not Deliver A Payment Assurance To The Utilities.**

Subsection (c)(2) of Section 366 authorizes a utility to alter, refuse or discontinue utility service to a chapter 11 debtor if, within thirty (30) days of the Petition Date, the utility does not receive from the debtor adequate assurance of payment for utility service that is satisfactory to the utility. In this case, the Utilities did not receive within thirty (30) days from the Petition Date, and have yet to receive, a payment assurance from the Debtor, let alone one that is satisfactory to the Utilities. Even if, for the sake of argument, one were to determine that the

10

Utility Account was an appropriate form of payment assurance, the Utilities' failure to receive such an assurance is not in question.  The Utilities do not possess or control the Utility Account and any utility's receipt of the alleged money the Utility Account depends on factors outside the control of that utility. The Bankruptcy Court's approval of a payment assurance that was not, and can not be delivered to the Utilities constitutes reversible error.

### III.    THE BANKRUPTCY COURT ERRED IN APPROVING "PROCEDURES" THAT REVERSED THE BURDENS IMPOSED BY CONGRESS IN REVISED SECTION 366

Much in the manner of the pre-BAPCPA practices in chapter 11, Debtors' Utility Motion, (i) unilaterally sought in Paragraph 20 to establish the form and amount of payment assurance to be provided to Utilities, and (ii) requested in Paragraph 26(c) that utilities be enjoined from exercising their statutory rights under Section 366(c)(2).

The language of Section 366(c)(2) is unequivocal.  Within thirty (30) days of the date upon which a chapter 11 petition is filed, the debtor must deliver to each of its servicing utilities "adequate assurance of payment for utility service that is satisfactory to [each] utility."   In mandating a debtor's delivery of a payment assurance that is satisfactory to a utility, Congress did not impose upon utilities any conditions precedent for the invocation of their rights under 11 U.S.C. § 366(c)(2).

Should a utility receive an assurance of payment in an amount deemed unreasonable by a debtor, 11 U.S.C. § 366(c)(3) authorizes a court to "modify" the amount of assurance required by and delivered to the utility.  Paragraph (c)(3) of Section 366 does not authorize a bankruptcy court to "establish" what is adequate assurance of payment prior to the utility "receiv[ing] from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2).  The right to obtain court modification of the amount of an assurance of payment only arises after the adequate assurance payment referenced in Section

11

366(c) is actually received by a utility. See In re Lucre, Inc., 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005)[4]; In re Viking Offshore (USA) Inc. 2008 WL 782449 (Bankr. S.D. Tex.) (holding that the plain language of Section 366(c)(2) makes clear that a Chapter 11 debtor must furnish adequate assurance of payment that is satisfactory to the utility. "The relief requested by Debtors would reverse the burden, by making an advance determination that the proposed assurance was adequate.").

Section 366(c) requires a debtor to timely communicate with its utility service providers (and not by the filing of a first-day motion) in an effort to reach an agreement within the first 30 days of a case concerning the assurance of payment that each utility will require. During this 30 day period, there are three possible scenarios: (1) the debtor and a utility will agree on the form and amount of payment assurance to ensure uninterrupted service; (2) the debtor will deem the service provided by a utility to be unnecessary and will request that the service be terminated; or (3) the debtor will deliver to the utility the requested assurance of payment and then move the bankruptcy court to modify the amount. Regardless of the scenario, a bankruptcy court's involvement under Section 366, if any, should commence only after the debtor has delivered the assurance of payment required by the utility.

Section 366 purposefully requires a debtor to timely deliver assurance of payment without imposing any burdens or other measures upon utilities, including first day motions, interim orders, *ex parte* hearings and other court proceedings. Specifically, in this case, the first, and only, communication the Utilities received from the Debtor regarding an assurance of payment was the Utility Motion. Rather than attempt to determine what assurance of payment the Utilities deemed reasonable, the Debtor requested that the Bankruptcy Court eliminate the discretion afforded the Utilities under Section 366(c)(2). In entering the Utility Order, the

---

[4] In *dicta*, the Court discussed an implied obligation upon utilities to act in good faith under § 366(c)(2). *In re Lucre, Inc.* 333 B.R. 151, 154 (Bankr. W.D. Mich. 2005).

Bankruptcy Court failed to recognize and/or enforce the Debtor's burden under 11 U.S.C. §366(c)(2) to deliver timely assurance of payment deemed satisfactory to the Utilities. Instead, the Bankruptcy Court shifted the burden to the Utilities and the Debtor's other servicing utilities to file objections to the payment assurance proposed by the Debtor, a procedure that was common prior to BAPCPA. The Utility Motion and the Final Order (1) create inappropriate hurdles that a utility must clear to obtain the payment assurances provided to them by Congress and (2) ignore the statutory protections afforded utilities under Section 366(c)(2). The Utility Order's disregard for these procedures constituted reversible error.

## IV.   THE PROCEDURES APPROVED BY THE BANKRUPTCY COURT DO NOT COMPLY WITH APPLICABLE NON-BANKRUPTCY LAW

The Debtors clearly obtained injunctive relief from the Bankruptcy Court. Both the Interim Order and Final Order prohibited Utility Companies from "...requiring the Debtors to furnish any additional deposit or other security..." and directed that "...pending notice and a hearing on the Determination Motion, the Utility Company that is the subject of the unresolved Request may not alter, refuse or discontinue services to the Debtors." Yet no adversary proceeding was ever been filed in accordance with the specific requirements of Federal Rule of Bankruptcy Procedure 7001. This requirement is black letter bankruptcy law. Federal Rule of Bankruptcy Procedure 7001(7)[5]; In re Conxus Communications, Inc., 262 B.R. 893, 899 (D.Del. 2001); In re Goldberg, 221 B.R. 907, 909 (Bankr. M.D.Fla. 1998); In re Best Products Co., 203 B.R. 51, 54 (Bankr. E.D.Va. 1996); In re Smith, 142 B.R. 348, 349 (Bankr. W.D.Mo. 1992); In re Kham & Nate's Shoes No. 2, Inc., 97 B.R 420, 428 (Bankr. N.D. Ill. 1989); In re John Alan Mann, Sr., 88 B.R. 427, 429 (Bankr. S.D. Fla. 1988); In re Ennis, 50 B.R. 119, 122 (Bankr. Nev.

---

[5] Federal Rule of Bankruptcy Procedure 7001 specifically provides that proceedings to "obtain an injunction or other equitable relief" are adversary proceedings governed by Part VII of the Rules.

1985); In re John C. Entz, III, 44 B.R. 483, 485 (Bankr. Ariz. 1984); 1 Collier Bankruptcy Manual ¶ 105.02[3].

Even without an injunction, a request for relief under Section 366 of the Bankruptcy Code would be a contested matter under Federal Rule of Bankruptcy Procedure 9014. Contested matters must be served in accordance with Federal Rules of Bankruptcy Procedure 9014 and 7004. Apparently, the Debtors failed to do so here. Nothing in the Debtor's Utility Motion suggests it ever intended to serve the Utilities with its motion for injunctive relief. "A Section 366(b) proceeding, therefore, is a contested matter covered by Bankruptcy Rule 914 and Bankruptcy Rule 901(9) Motion, and the motion procedure of the local rules of this Court." Matter of RobMac, Inc., 8 B.R. 1, 3 (Bankr. N.D.Ga. 1979). As a result, the Debtor was required to serve the Utility Motion in the manner required by Federal Rule of Bankruptcy Procedure 7004 so that the parties against whom relief was sought had a meaningful opportunity to oppose that relief. Federal Rule of Bankruptcy Procedure 7004 requires that service of a motion upon a corporation be made by mail to the attention of an officer, a managing or general agent, or to any other agent authorized by appointment or by law. No officer, managing or general agent, or other agent authorized by appointment or law was identified in the Debtor's Utility Motion or in the papers reflecting to whom it was sent. [6] Service of process is as fundamental a right as a party-litigant has. "No harm, no foul" is not the appropriate standard when it comes to letting someone know he has been sued.

While Debtors did not expressly rely upon Section 105 of the Bankruptcy Code in their papers, it is important to note that the Bankruptcy Court does not have authority under Section 105(a) to dispense with the express requirements of Section 366 and the Bankruptcy Rules.

---

[6] The Debtors' affidavit of mailing at Docket Entry 166 stated that the outside of each envelope sent by mail contained the language: "Legal Documents Enclosed: Please Direct To Attention Of Addressee, President or Legal Department. The addition of such language to the envelope does not satisfy the requirements of Bankruptcy Rule 7004.

14

Section 105, which is akin to the All Writs Statute set forth in 28 U.S.C. 1651, was not intended

to be a substantive grant of power to the Bankruptcy Court.  Rather, it was intended to enable a

Court to issue orders that are necessary to carry out the other provisions of the Bankruptcy Code.

Section 105 does not confer upon the Bankruptcy Court the authority to modify the express

terms of legislation or to interpret a Code section so as to nullify its intended effect.  Matter of

PHM Credit Corp., 110 B.R. 284, 288 (E.D. Mich. 1990); In re Rashid, 97 B.R. 610, 615

(W.D.Okl. 1989) (Section 105 not available to alter plain language of state statute); In re Persig

Farms, Inc., 46 B.R. 237, 240 (D. Minn. 1985) (Section 105 cannot be used to alter provisions of

Section 544(a)); In re Sonora Convalescent Hospital, Inc., 69 B.R. 134, 138 (Bankr. E.D.Cal.

1986) (Section 105 cannot be used to alter time limits of Section 365(d)(4)).  Debtors' reference

in their Motion to the Court's authority to impose this relief was an invitation to a form of

judicial activism that, despite the writing of certain bankruptcy courts, has been repeatedly

restricted by appellate courts.  As the Supreme Court succinctly stated:

> The short answer to these arguments is that whatever equitable powers remain in the
> bankruptcy courts must and can only be exercised within the confines of the Bankruptcy
> Code.

Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 108 S.Ct. 963, 968-69 (1988); In re

Morristown & Erie R.R. Co., 885 F.2d 98, 100 (3rd Cir. 1989) ("Section 105(a) authorizes the

bankruptcy court, or the district court sitting in bankruptcy, to fashion such orders as are required

to further the substantive provisions of the Code.  Section 105(a) gives the court general

equitable powers, but only insofar as those powers are applied in a manner consistent with the

Code."); Manville Corp. v. Equity Security Holders Committee, 801 F.2d 60 (2d Cir. 1986);

Southern Ry. Co. v. Johnson Bronze Co., 758 F.2d 137, 141 (3rd Cir. 1985) (Section 105 does

not permit the bankruptcy court to create rights not otherwise available under applicable law).

The Debtors' construct for adequate assurance and the Court's Orders plainly required

15

that the Utilities undertake procedures not required by the rules and regulation adopted by the Public Service Commissions. Indeed, the Interim and Final Orders directed utilities that were not satisfied with the Debtors' proposed assurance to file a "Request" setting forth a summary of the Debtors' payment history on each account and an explanation of why the Utility Account was not adequate. Moreover, in the event of a payment delinquency for post-petition monthly service, the Final Order directed the utilities to file with the Bankruptcy Court a "Delinquency Notice" and serve it upon numerous parties other than the Utilities' customers. The Utilities have no such "procedures" in their regulations and bypassing the regulatory apparatus created at the state level by the Public Service Commissions for handling payment defaults was wholly inappropriate. In so doing, the Bankruptcy Court assumed the role regulator and ventured far beyond its limited charge under Section 366(c)(3) to modify the "amount" of assurance.

Congress has directed in 28 U.S.C. 959(b) that debtors in possession and trustees in bankruptcy "manage and operate the property in [their] possession ... according to the requirements of the valid laws of the State in which such property is situated, in the same manner that the owner or possessor thereof would be bound to do if in possession thereof." The ordered by the Bankruptcy Court contravened applicable regulations approved by the state Public Service Commissions that provide for the billing of deposits and the termination of service. Such regulations have the force of law in the State of Florida. Potts v. FPL, 841 So.2d 671 (Dist. Ct. App. 2003); Landrum v. FPL, 505 So.2d 552 (Dist. Ct. App. 1987), and overriding them contravenes the spirit, if not the letter, of 28 U.S.C. 959(b). While decisions on modifying the amount of adequate assurance were given by Congress to the bankruptcy courts, Congress did not cede under Section 366 the authority to alter a utility's procedures specifically approved by the respective governing bodies at the state and local level.

CONCLUSION

It is a fundamental tenet of statutory construction that Congress "says in a statute what it means and means in a statute what it says there." *Hartford Underwriters, Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 6 (2000) (internal citations omitted). When "the statute's language is plain, 'the sole function of the courts' – at least where the disposition required by the text is not absurd – 'is to enforce it according to its terms'". *Id.* Here, the Bankruptcy Court failed to interpret strictly the plain language of Section 366 when the Utility Orders and instead relied on the past practices which Section 366 sought to eliminate. Based upon the reasons and authorities set forth herein, the Utilities submit that the Utility Orders should be reversed and request that this Court enter an order (i) vacating the Utility Orders, (ii) denying the Utility Motion, and (iii) granting to the Utilities such additional relief as this Court deems proper.

Dated: August 29, 2008

Respectfully submitted,

/s/Michael P. Morton
Michael P. Morton
Michael P. Morton P.A.
1209 North Orange
Wilmington DE
(302) 426-1313

and

/s/ William Douglas White
William Douglas White, Esquire
McCarthy & White, PLLC
8180 Greensboro Drive - Suite 875
McLean, VA 22102
(703) 770-9265
(703) 770-9266 (fax)
Email: wdw@mccarthywhite.com

Counsel for Delmarva Power & Light Company
Atlantic City Electric Company, Potomac Electric
Power Company, Florida Power & Light Company
and Sacramento Municipal Utility District

17

CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August 2008, I caused a true and correct copy of

the Brief to be served through the Court's electronic noticing system and by email the parties

listed below:

Pauline K. Morgan
Joel A. Waite
Joseph M. Barry
Sean T. Greecher
Ryan M. Bartley
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington DE  19801

/s/ William Douglas White
William Douglas White