IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| BUFFETS HOLDINGS, INC., *et al.*, ) | |
| ) | Case No. 08-10141 (MFW) |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |
| ) | |
| DELMARVA POWER & LIGHT ) | |
| COMPANY, *et al.*, ) | Civ. A. No. 08-188-SLR |
| ) | |
| Appellants, ) | |
| ) | |
| v. ) | |
| ) | |
| BUFFETS HOLDINGS, INC., *et al.*, ) | |
| ) | |
| Appellees. ) | |

**MEMORANDUM ORDER**

At Wilmington this 24th day of February, 2009, having reviewed Buffets Holdings, Inc., and its subsidiaries' (collectively, "debtors") motion to dismiss the appeal filed by Delmarva Power & Light Company, Potomac Electric Power Company, Atlantic City Electric Company, Florida Power & Light Company, and Sacramento Municipal Utility District (collectively, "the objecting utilities"), and the papers filed in connection therewith;

IT IS ORDERED that said motion to dismiss (D.I. 16) is granted, for the reasons that follow:

1. **Background.**[1] On January 22, 2008, debtors filed voluntary chapter 11 petitions in the United States Bankruptcy Court for the District of Delaware. (D.I. 18 at ¶ 2) As of that date, debtors had over 4,400 utility accounts in connection with their 626 restaurants and other corporate locations. (*Id.* at ¶ 3) Some of those accounts were with the objecting utilities, each of which provided utility service to certain of the debtors' restaurants. (*Id.* at ¶ 4)

2. On the same day that debtors filed their petitions, debtors filed a motion (Bk. D.I. 6) ("the utility motion") requesting, *inter alia*, that the bankruptcy court authorize the debtors to deposit cash in a segregated bank account for the benefit of debtors' utility providers in an amount equal to approximately 50% of debtors' aggregate average monthly utility expenditures related to debtors' utility accounts. (D.I. 18 at ¶¶ 5-6) The next day, on January 23, 2008, the bankruptcy court granted the utility motion on an interim basis. (*See* D.I. 2 at 2 (citing Bk. D.I. 32 ("the interim order")))

3. On February 6, 2008, the objecting utilities filed their objection to the segregated bank account authorized in the interim order. (*See id.* at 2 (citing Bk. D.I. 189)) On February 8, 2008, consistent with the interim order, debtors deposited approximately $3.9 million into the segregated bank account for the benefit of debtors' utility providers, including the objecting utilities. (*See* D.I. 18 at ¶ 6)

4. On February 13, 2008, debtors and the objecting utilities participated in a hearing before the bankruptcy court to discuss, *inter alia*, whether the segregated bank account at issue was an assurance of payment in accord with 11 U.S.C. § 366(c). (*See*

---

[1]The facts set forth in this background section, some of which the court takes from the declaration of Paul Holovnia (D.I. 18) submitted by debtors, are not in dispute.

Bk. D.I. 375) The bankruptcy court concluded that the account was and, on February 28, 2008, issued a final order (Bk. D.I. 414) ("the final order") granting the utility motion. (*See* D.I. 18 at ¶ 7) As of February 27, 2008, consistent with the final order, debtors had allocated $189,120 of the funds in the segregated bank account to the objecting utilities. (*Id.*)

    5. On March 12, 2008, the bankruptcy court held a hearing on the amount of funds to be allocated to the objecting utilities. (*Id.* at ¶ 8) On March 25, 2008, the bankruptcy court issued an order stating that, instead of the $189,120 previously allocated, the debtors need only allocate $94,560 to the objecting utilities as adequate assurance of payment. (*See id.*; Bk. D.I. 554 ("the modification order")) Thereafter, debtors terminated one of their accounts with objecting utility Sacramento Municipal Utility District and so no longer needed to maintain assurance for that utility account. (*Id.* at ¶ 8) Accordingly, debtors reduced to $89,675.75 the amount allocated to the objecting utilities. (*Id.*)

    6. On April 3, 2008, the objecting utilities filed with this court notice of appeal of the final order (D.I. 1),[2] and on August 28, 2008, they filed their opening brief (D.I. 14). On September 3, 2008, debtors mailed checks to the objecting utilities for the amounts allocated to each of them in the modification order.[3] (D.I. 18 at ¶ 9)

---

    [2]The objecting utilities did not appeal the modification order.

    [3]As of September 18, 2008, objecting utilities Florida Light & Power Company, Atlantic City Electric Company, and Delmarva Power & Light Company have returned the checks to debtors. (D.I. 18 at ¶ 10) Objecting utility Potomac Power & Light Company has cashed the check but has subsequently informed debtors that it will be returning the tendered amount. (*Id.*) Objecting utility Sacramento Municipal Utility District has neither cashed nor returned its check. (*Id.*)

7. **Analysis.** "Under Article III of the Constitution, federal courts may adjudicate only actual, ongoing cases or controversies." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). For a federal court to exercise jurisdiction, the controversy must exist at every stage of the case, including appellate review. *Deakins v. Monaghan*, 484 U.S. 193, 199 (1988); *Lewis*, 494 U.S. at 477 (case or controversy requirement runs "through all stages of federal judicial proceedings, trial and appellate"); *Jersey Cent. Power & Light Co. v. New Jersey*, 772 F.2d 35, 36 (3d Cir. 1985) ("a case must present a live controversy throughout the entire course of the litigation"). Where events transpire during the case to eliminate the controversy, "the case must be dismissed as moot." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698-699 (3d Cir. 1996); *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"). Mootness for lack of a controversy has been referred to as constitutional mootness. *See, e.g., United Artists Theatre Co. v. Walton*, 315 F.3d 217, 226 (3d Cir. 2003).

8. Relevant here, "[a]n appeal is moot in the constitutional sense only if events have taken place that make it 'impossible for the court to grant any effectual relief whatever.'" *Id.* (quoting *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992). If the court "can fashion '*some* form of meaningful relief,' . . . the appeal is not moot." *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 560 (3d Cir. 1994) (quoting *Church of Scientology*, 506 U.S. at 12) (emphasis original)); *see also Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 934 (3d Cir. 1992).

4

9. Even where a case otherwise appears to be moot, the court retains jurisdiction where the "capable of repetition, yet evading review" exception applies. *See, e.g., Weinstein v. Bradford*, 423 U.S. 147, 149 (1975); *Lorillard Tobacco Co. v. Bisan Food Corp.*, 377 F.3d 313, 318 (3d Cir. 2004) (citing *Vuitton v. White*, 945 F.2d 569, 571 (3d Cir. 1991)). The exception applies where: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein*, 423 U.S. at 149.

10. Debtors move to dismiss the objecting utilities' appeal on constitutional mootness grounds. Specifically, debtors argue that the only effectual relief that the court could grant on appeal would be ordering debtors to provide the objecting utilities with a form of payment assurance within the objecting utilities' control, which debtors contend is exactly what they provided when they sent checks to the objecting utilities in the amount ordered by the bankruptcy court.

11. The court agrees with debtors. The "live controversy" between the parties was whether debtors, by depositing funds in a segregated bank account putatively under debtors' control, had provided the objecting utilities with the assurance of payment to which they were entitled pursuant to § 366. Put simply, the controversy was over whether the objecting utilities had been paid and, if the objecting utilities prevailed on appeal, the only effectual relief the court could grant would be to order that they be paid. Consequently, as soon as debtors tendered checks to the objecting utilities in an amount equal to their assurance of payment obligations, *i.e.*, paid them, the objecting utilities had received their effectual relief and the controversy died. The case, then, has

become moot.

12. The objecting utilities contend that the "capable of repetition, yet evading review" exception applies here, but the court disagrees. Even if the court accepts that the objecting utilities are likely to face this same issue in the future, thus making it "capable of repetition," see, e.g., In re Price, 370 F.3d 362, 365 (3d Cir. 2004), the court does not find that the issue "evad[es] review," that is, that the duration of the challenged action here is too short to be fully litigated. To "evad[e] review," the challenged action must be "**by its very nature** short in duration, so that it could not, or probably would not, be able to be adjudicated while fully alive." Finberg v. Sullivan, 634 F.2d 50, 55 (3d Cir. 1980) (quoting Dow Chemical Co. v. EPA, 605 F.2d 673, 678 n.12 (3d Cir. 1979) (emphasis added; internal quotation marks omitted); see also, e.g., Gulf of Maine Fisherman's Alliance v. Daley, 292 F.3d 84, 88 (1st Cir. 2002); Hickman v. Missouri, 144 F.3d 1141, 1143 (8th Cir. 1998); LaRouche v. Fowler, 152 F.3d 974, 978 (D.C. Cir. 1998). Cases concerning public election issues, for example, satisfy the "evading review" prong of the exception because elections, by their nature, "are almost invariably of too short a duration in which to complete litigation." Van Bergen v. Minnesota, 59 F.3d 1541, 1547 (8th Cir. 1995); see also, e.g., Belitskus v. Pizzingrilli, 343 F.3d 632, 648 (3d Cir. 2003) (ballot access case not mooted by end of election); cf. Roe v. Wade, 410 U.S. 113, 125 (1973) ("human gestation period is so short that the pregnancy will come to term before the usual appellate process is complete"); Ameron, Inc. v. United States Army Corps of Eng'rs, 787 F.2d 875, 879-81 (3d Cir. 1986) (statutory 90-day automatic stay provision too short in duration for its constitutionality ever to be fully

litigated and appealed).

13. In contrast, the challenged action here (debtors' putative retention of funds) need not, by its nature, have terminated prior to the litigation's completion. Debtors could have retained the funds at least until the appeal was resolved, and it was by choice, not by nature, that debtors ceased retaining the funds. Thus, the challenged action does not "evad[e] review," and the exception does not apply.

14. **Conclusion.** Consistent with the foregoing analysis, the court concludes that the objecting utilities' appeal has become moot. Therefore, debtors' motion to dismiss (D.I. 16) is granted, and the objecting utilities' appeal (D.I. 1) is denied as moot.

_____
United States District Judge